**Nos. 22-2153, 23-1952**

## In the United States Court of Appeals
## For the Federal Circuit

SALIX PHARMACEUTICALS, LTD.,
SALIX PHARMACEUTICALS, INC.,
BAUSCH HEALTH IRELAND LTD., ALFASIGMA S.P.A.,
*Plaintiffs - Appellants*

v.

NORWICH PHARMACEUTICALS INC.,
*Defendant - Cross-Appellant.*

On Appeal from the United States District Court for the
District of Delaware (Hon. Richard G. Andrews, presiding)
Case No. 1:20-cv-00430

## PETITION FOR REHEARING

MORGAN, LEWIS & BOCKIUS LLP
   Julie S. Goldemberg
2222 Market Street
Philadelphia, PA 19103
(215) 963-5095

MORGAN, LEWIS & BOCKIUS LLP
   Michael J. Abernathy
   Karon Nicole Fowler
   Michael Sikora
110 North Wacker Drive, Ste. 2800
Chicago, IL 60606
(312) 324-1000

MORGAN, LEWIS & BOCKIUS LLP
   William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

*Counsel for Appellants*

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Numbers** | 22-2153, 23-1952 |
| **Short Case Caption** | *Salix Pharmaceuticals, Ltd. v. Norwich Pharmaceuticals Inc.* |
| **Filing Party/Entity** | Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Alfasigma S.p.A., Bausch Health Ireland Ltd |

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

/s/ William R. Peterson

William R. Peterson
*Counsel for Appellants, Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Bausch Health Ireland Ltd., Alfasigma S.P.A.*

Dated: May 10, 2024

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Salix Pharmaceuticals, Ltd. | Not Applicable | Bausch Health Companies Inc. |

| Salix Pharmaceuticals, Inc. | Not Applicable | Bausch Health Companies Inc. |
| Bausch Health Ireland Ltd. | Not Applicable | Bausch Health Companies Inc. |
| Alfasigma S.p.A. | Not Applicable | Turytes S.p.A. |

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

| Karen Jacobs<br>Morris Nichols Arsht & Tunnell LLP | Damien N. Dombrowski<br>Venable LLP | Daniel A. Apgar<br>Venable LLP |
| Jack B. Blumenfeld<br>Morris Nichols Arsht & Tunnell LLP | Alexis M. McJoynt<br>Venable LLP | Eric T. Harmon<br>Venable LLP |
| Cameron P. Clark<br>Morris Nichols Arsht & Tunnell LLP | Becky E. Steephenson<br>Venable LLP | Kelly A. Plummer<br>Morgan, Lewis & Bockius LLP |
| Scott K. Reed<br>Venable LLP | Steven C. Kline<br>Venable LLP | Shannon K. Clark<br>Venable LLP |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (See separate notice at dkt. 5)　　☐ No　　☐ N/A (amicus/movant)

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable

# TABLE OF CONTENTS

**Page**

Certificate of Interest ................................................................................. i

Table of Contents ...................................................................................... i

Table of Authorities ................................................................................. ii

Statement of Counsel ............................................................................... 1

Points Overlooked or Misapprehended ................................................... 2

Argument ................................................................................................... 3

I.    This Court Must Review the District Court's Findings and May Not Guess at Findings Left Unmade. ................................................... 5

II.   Rather than Remand, the Majority Opinion Guesses at Findings that the District Court Left Unmade. ......................................................... 6

    A.    The Majority Opinion Abandons the District Court's Analysis. ...................................................................................... 6

    B.    Courts of Appeals Are Ill-Equipped to Find Facts in the First Instance. ........................................................................................ 11

    C.    The Decision in This Appeal Cannot Be Harmonized with *Janssen*. ....................................................................................... 13

III.  The Majority Applied the Incorrect Standard for Harmless Error. ............... 14

IV.   This Error Warrants Correction by this Court En Banc. ............................. 17

Conclusion & Prayer ............................................................................... 18

Certificate of Compliance with Type-Volume Limitations ..................... 19

Addendum ................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allergan, Inc. v. Apotex Inc.*,
   754 F.3d 952 (Fed. Cir. 2014) ............................................................7

*Atlantic Thermoplastics Co. v. Faytex Corp.*,
   5 F.3d 1477 (Fed. Cir. 1993) ............................................1, 3, 5, 11

*Collins & Aikman Corp. v. Carpostan Indus., Inc.*,
   905 F.2d 1529 (4th Cir. 1990) ........................................................15

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
   527 F.3d 1318 (Fed. Cir. 2008) ......................................................11

*Google LLC v. IPA Techs. Inc.*,
   34 F.4th 1081 (Fed. Cir. 2022) .......................................................14

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   701 F.3d 1351 (Fed. Cir. 2012) ........................................................3

*Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*,
   865 F.3d 1348 (Fed. Cir. 2017) ........................................................8

*Icicle Seafoods, Inc. v. Worthington*,
   475 U.S. 709 (1986) ...........................................................1, 3, 5, 8

*In re Applied Materials, Inc.*,
   692 F.3d 1289 (Fed. Cir. 2012) ........................................................7

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
   676 F.3d 1063 (Fed. Cir. 2012) ......................................................12

*Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*,
   821 F.3d 1359 (Fed. Cir. 2016) .....................................................6, 7

*Janssen Pharms., Inc. v. Teva Pharms. USA, Inc.*,
   97 F.4th 915 (Fed. Cir. 2024) .........................................................13

TABLE OF AUTHORITIES
(continued)

Page(s)

*Kelley v. Everglades Drainage Dist.*,
 319 U.S. 415 (1943) ............................................................................ 13

*Lussy v. Comm'r of IRS*,
 651 F. App'x 883 (11th Cir. 2016) .................................................... 15

*O'Connor v. Peru State Coll.*,
 781 F.2d 632 (8th Cir. 1986) ............................................................ 15

*S. Pac. Transp. Co. v. Chabert*,
 973 F.2d 441 (5th Cir. 1992) .............................................................. 4

*Syntex (U.S.A.) LLC v. Apotex, Inc.*,
 407 F.3d 1371 (Fed. Cir. 2005) ........................................................ 13

*Teva Pharm. USA, Inc. v. Corcept Therapeutics, Inc.*,
 18 F.4th 1377 (Fed. Cir. 2021) ........................................................... 6

*United States v. Ortiz-Ramirez*,
 143 F. App'x 729 (8th Cir. 2005) .................................................... 15

*Weinhoffer v. Davie Shoring, Inc.*,
 23 F.4th 579 (5th Cir. 2022) ............................................................ 15

RULES

Fed. R. Civ. P. 50 .................................................................................... 5

Fed. R. Civ. P. 52 ................................................................................ 3, 5

OTHER AUTHORITIES

Alan B. Parker, *Examining Distinctive Jurisprudence in the Federal Circuit:
Consequences of A Specialized Court*, 3 AKRON INTELL. PROP. J. 269
(2009) .................................................................................................. 17

9C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND
PROCEDURE § 2585 (3d ed. 1998) ...................................................... 5

TABLE OF AUTHORITIES
(continued)

**Page(s)**

Joan Steinman, *Appellate Courts As First Responders: The Constitutionality and Propriety of Appellate Courts' Resolving Issues in the First Instance*, 87 NOTRE DAME L. REV. 1521, 1604 (2012) ....................................................12

## STATEMENT OF COUNSEL

Based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States and of this Court: *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709 (1986); *Atlantic Thermoplastics Co. v. Faytex Corp.*, 5 F.3d 1477 (Fed. Cir. 1993).

Based on my professional judgment, I believe this appeal requires an answer to a precedent-setting question of exceptional importance: Whether a panel of this Court may affirm findings of a district court based on an analysis the district court never conducted and evidence the district court never credited.

*/s/ William R. Peterson*
William R. Peterson

## POINTS OVERLOOKED OR MISAPPREHENDED

The majority opinion overlooks this Court's limited role in reviewing findings of fact following a bench trial.  This Court must review the district court's findings and may not guess at findings left unmade below.

The majority opinion overlooks the correct standard for harmless error in a bench trial.  This Court must consider whether incompetent evidence induced the district court to make an essential finding which it otherwise would not have made.

# ARGUMENT

*Our court system has well-defined roles: the trial court makes factual findings and the appellate court reviews those findings with deference to the expertise of the trial court.*

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 701 F.3d 1351, 1356 (Fed. Cir. 2012) (Moore, J., dissenting from rehearing en banc)

This petition for rehearing concerns the core of this Court's powers and duties as an appellate tribunal. In reviewing a bench trial under Rule 52(a), this Court "must review factual findings made by the district court; it may not guess at findings left unmade." *Atl. Thermoplastics Co. v. Faytex Corp.*, 5 F.3d 1477, 1479 (Fed. Cir. 1993). "Fact-finding by the appellate court is simply not permitted." *Id.*

As Judge Cunningham's dissent demonstrates, the majority opinion transgresses these well-established principles. The district court committed a legal error: it misapplied this Court's prior-art range-precedent and treated the claims as presumptively obvious. The district court did not expressly find that skilled artisans would have an expectation of success in using the claimed method of treatment to achieve the claimed results in treating irritable bowel syndrome with diarrhea (IBS-D).

On appeal, Salix urged the panel to apply the proper rule of law to the district court's findings and reverse or, alternatively, remand to the district court. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); Opening Br. 47-48; Resp. & Reply Br. 16-19.

The panel majority instead made findings of fact in the first instance, abandoning the district court's analysis and crediting evidence the district court never addressed. The majority opinion resolves a key factual dispute—whether skilled artisans would view small intestinal bacterial overgrowth (SIBO) as a cause of IBS-D or as a separate disorder—that was hotly disputed at trial and unresolved by the district court.

The majority's departure from its role as a court of review is revealed most clearly in its treatment of the RFIB 2001 Press Release, the key reference relied upon by the district court. Salix demonstrated on appeal that the press release was not prior art: Norwich failed to prove that it was "by others" under pre-AIA Section 102(a). Opening Br. 31-35. The majority held that any error was harmless. Op. at 11. Rather than apply the correct standard—whether "the incompetent evidence induced the court to make an essential finding which it otherwise would not have made," *S. Pac. Transp. Co. v. Chabert*, 973 F.2d 441, 448 (5th Cir. 1992)—the majority found that other evidence "established" the fact.

As a court of specialized jurisdiction, this Court faces a particular temptation to rely on its expertise and make factual findings in the first instance. Regardless of its expertise in patent law, this Court should remember its vital duty to review district court's findings and not find facts in the first instance. Rehearing is warranted.

4

**I.      This Court Must Review the District Court's Findings and May Not Guess at Findings Left Unmade.**

Reviewing a decision from a bench trial differs significantly from reviewing a denial of a motion for judgment as a matter of law from a jury trial.  If Salix had appealed the denial of a Rule 50 motion, then this Court would properly ask whether "a reasonable jury would . . . have a legally sufficient evidentiary basis to find" an expectation of success.  Fed. R. Civ. P. 50(a).  The majority's approach—reviewing all the evidence to see whether a reasonable factfinder had a sufficient basis to make the finding—would have been correct, and Salix would have no complaint.

But Rule 52(a) requires a more constrained approach.  This Court's role is to "discuss" and "analyze" the district court's findings, *Icicle Seafoods*, 475 U.S. at 713, **not** determine whether other evidence or different reasoning might support the same ultimate conclusion.  *See* 9C Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2585 (3d ed. 1998) (clear error can occur even when "there is [substantial] evidence supporting [a finding]").

This Court has explained that it "must review factual findings made by the district court; it may not guess at findings left unmade." *Atl. Thermoplastics*, 5 F.3d at 1479.  If there are gaps (or errors) in the district court's fact-finding, this Court must remand rather than fill them itself.

## II.    Rather than Remand, the Majority Opinion Guesses at Findings that the District Court Left Unmade.

### A.    The Majority Opinion Abandons the District Court's Analysis.

The two method claims at issue concern treating IBS-D with a specific dosage: 550 mg three times per day (*i.e.*, 1,650 mg/day) for fourteen days. The reasonable-expectation-of-success analysis must be framed "around that specific dosage." *Teva Pharm. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1381 (Fed. Cir. 2021).

Both claims require specific results. Claim 3 of U.S. Patent No. 10.765,667 requires treating one or more symptoms in a subject 65 years of age or older. Claim 2 of U.S. Patent No. 8,309,569 requires "about 12 weeks of adequate relief of symptoms" after the subject is removed from treatment. These claims could be obvious only if a skilled artisan would have had a "reasonable expectation of achieving what is claimed," *i.e.*, the claimed results using the claimed method of treatment. *Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016). Norwich bore the burden to prove this fact by clear and convincing evidence.

But the district court did not find that a skilled artisan would have a reasonable expectation of success using the claimed dosage to achieve the claimed results in

treating IBS-D. Appx33-34.[1]  It first found that skilled artisans "have a motivation to use rifaximin for the treatment of IBS-D." Appx38. With respect to dosage, the district court found only that "the prior art disclosed positive results in using rifaximin to treat IBS-D for a range of doses," Appx34, and "[t]he asserted IBS-D claims describe a dosing regimen within the known range." Appx34; Appx39.

The district court then applied this Court's prior-art range-precedent to presume obviousness. *See* Appx39 ("Where the general conditions of a claim are disclosed in the prior art, it is not inventive to discover the optimum or working ranges by routine experimentation." (quoting *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012)).

But as Salix detailed on appeal (and the panel majority did not deny), the district court's analysis was erroneous. The upper end of the "range of doses" for which the prior art "disclosed positive results in using rifaximin to treat IBS-D" was 1,200 mg/day. Appx39. The only mention of a dosage larger than 1,200 mg/day in the district court's opinion is the RFIB 2001 Protocol, which proposed testing 2,200

---

[1] The district court found, "A POSA would have been motivated to combine the RFIB 2001 Protocol and Pimentel 2006 with a reasonable expectation of success." Appx33. But this finding does not "consider the appropriate scope of the . . . patent's claimed invention." *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 966 (Fed. Cir. 2014). "[W]hether one would reasonably expect the prior art references to operate as those references intended once combined . . . is not the correct inquiry—one must have a motivation to combine accompanied by a reasonable expectation of achieving what is claimed in the patent-at-issue." *Intelligent Bio-Sys.,* 821 F.3d at 1367.

mg/day.  But this protocol "did not disclose results."  Appx40.  The RFIB 2001 Press Release (which reported results of a study conducted according to this protocol) showed success **only** for the protocol's 1,100 mg/day dosage.  Appx39.

From the district court's fact-finding, the claimed dosage was outside, not inside, the known range of dosages that would successfully treat IBS-D.  The panel should have either reversed or remanded for additional fact-finding.  *Icicle Seafoods*, 475 U.S. at 714.

The majority did neither.  Instead, it independently analyzed the evidence, relied on prior art not credited by the district court, and conducted its own fact-finding.

The majority's analysis of the evidence began with a statement from Pimentel 2006: "Recent data suggest that the optimal dosage of rifaximin may, in fact, be higher than that used in our study."  Op. at 8.  The majority's finding that this statement created an expectation of success (by clear and convincing evidence) is erroneous on its face: a statement about what "may"—or may not—be true does not create an expectation of success by clear-and-convincing evidence.  *See, e.g.*, *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1356 (Fed. Cir. 2017) ("Unpredictability of results equates more with nonobviousness rather than obviousness[.]").

More importantly, as Judge Cunningham noted in dissent, "the district court only relied on this sentence in its motivation to combine analysis and did not rely on this sentence in its reasonable expectation of success analysis." Dissent at 5.[2] Furthermore, the majority's theory was unpreserved: "The parties never made this argument before us." Dissent at 5.

The majority's approach diverges from the district court's: one cannot read the opinion below and conclude the **district court** found, by clear and convincing evidence, that the statement "the optimal dosage of rifaximin may be higher" created an expectation of success in using the claimed dosage to achieve the claimed results in treating IBS-D. The district court never made such a finding, and the majority erred by making the finding itself.

Compounding the error, the majority then turned to three references never credited by the district court: Lauritano, Scarpellini, and Lin. Op. at 9-10. These references concern the treatment of SIBO, not IBS-D. Resp & Reply Br. 18.

The parties hotly contested the relationship between SIBO and IBS-D at trial. Norwich's theory was that SIBO is a cause of IBS-D and thus that skilled artisans would expect success in treating IBS-D with any SIBO treatment. Appx3138-3140.

---

[2] Pimentel 2006 was a deeply flawed reference, to the extent that it was published alongside an editorial that cautioned against relying on it. *See* Appx 5152-5153 (Drossman editorial noting "several methodological issues" that made Pimentel 2006's "findings inconclusive" and cast doubt on "the clinical significance of the results"); Opening Br. 10-11 (discussing other issues).

Salix's expert testified, in contrast, that "[SIBO] is a separate disease" from IBS. Appx3260; *see also* Appx3261-3162 ("[I]t's one of those things you might look for and treat as a separate disease because it mimics the symptoms of IBS with diarrhea."). Numerous publications confirmed Salix's view. Appx3262-3264. Skilled artisans would have no expectation that a treatment for SIBO—a "separate disease"—would successfully treat IBS-D.

To the extent that the district court resolved this factual dispute, it agreed with Salix. In analyzing expectation of success, the district court considered only prior art showing "positive results in using rifaximin to treat IBS-D." Appx34. And in discussing the "known range," the district court looked only at references reporting results for IBS-D treatment, not SIBO treatment. Appx38.

The district court merely acknowledged the references cited by the majority—Lauritano, Scarpellini, and Lin—as prior art, Appx33; it did not rely on them in its analysis, Appx38. The majority took it upon itself to make a finding about the relationship of SIBO and IBS-D on which the district court was, at a minimum, silent. Op. at 9. Based on that finding, the majority then credited the prior art and made its own findings regarding the teachings of that art in the first instance.

Judge Cunningham's dissent highlights the majority's error in finding these facts: "Although the majority may be right that Lauritano's and Scarpellini's disclosures on treating SIBO also support finding a reasonable expectation of

success for treating IBS-D, the district court never made this finding." Dissent at 6 (internal citation omitted). "I would not make such fact-findings about Scarpellini and Lauritano in the first instance." *Id.* (citing *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1323 (Fed. Cir. 2008) (declining to find what a prior art reference teaches in the first instance)).

### B.    Courts of Appeals Are Ill-Equipped to Find Facts in the First Instance.

The majority's analysis illustrates precisely why courts of appeals may not engage in fact finding or "guess at findings left unmade." *Alt. Thermoplastics*, 5 F.3d at 1479. The district court—not this Court—has access to the full record, is present for the live testimony, and is positioned to make factual findings.

The panel lacked the full context necessary to conduct fact-finding in the first instance. For example, the majority opinion erroneously conflates "bacterial alteration" as a potential cause of IBS-D with Norwich's theory that treatment of SIBO equates to treatment of IBS-D. Op. at 9. Parties on appeal do not have the words available to address every conceivable misinterpretation of the record, and this Court spends far less time with a case than a district judge who sits through trial and receives the evidence firsthand. The district court heard days of witness testimony; this Court heard 30 minutes of attorney argument.

Similarly, as detailed below, the majority overlooked the strong, perhaps even overwhelming, evidence of skepticism presented by Salix. Opening Br. 12. An

article written near-contemporaneously with the priority date of the IBS-D Patents surveyed the literature (including the prior art relied on by Norwich) and concluded that there was no expectation of success in using rifaximin to treat IBS-D: "There is insufficient evidence to recommend antibiotics for the treatment of irritable bowel syndrome at present." Appx5543. Accurate fact-finding would have required the majority to consider the evidence that weighed against, as well as in favor of, its findings. This Court reverses district courts and PTAB panels that, like the majority here, fail to address secondary considerations in obviousness fact-finding. *See In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*, 676 F.3d 1063, 1075 (Fed. Cir. 2012) (noting the "require[ment] that a fact finder consider all evidence relating to obviousness before finding a patent invalid").

This Court is "less experienced than trial judges at making fact-findings and in making discretionary judgments of the kind that trial judges often have to make." Joan Steinman, *Appellate Courts As First Responders: The Constitutionality and Propriety of Appellate Courts' Resolving Issues in the First Instance*, 87 NOTRE DAME L. REV. 1521, 1604 (2012). Any "doubt should be resolved in favor of remand to the district court so that the record can be fully developed and district courts can fulfill the functions that ordinarily are theirs." *Id.* at 1607.

After recognizing that the district court erred, the majority should have remanded (or reversed). But conducting its own fact-finding was impermissible:

"[I]t is not the function of this court to search the record and analyze the evidence in order to supply findings which the trial court failed to make." *Kelley v. Everglades Drainage Dist.*, 319 U.S. 415, 421-22 (1943).

### C.     The Decision in This Appeal Cannot Be Harmonized with *Janssen*.

The majority's willingness to conduct independent fact-finding to affirm sharply contrasts with this Court's recent decision in *Janssen Pharmaceuticals, Inc. v. Teva Pharmaceuticals USA, Inc.*, 97 F.4th 915 (Fed. Cir. 2024).  There, a separate panel in a precedential decision remanded after correcting the district court's understanding about the scope of the claims, which "impacted the district court's overall obviousness analysis." *Id.* at 926-27.

This Court held "the court's framing led it to ask the wrong questions about important aspects of the obviousness inquiry." *Id.* at 927.  The *Janssen* panel correctly remanded to the district court: "This error requires a remand as to all claims because as it currently stands, the record does not contain underlying obviousness factfindings that are cued to the 'a psychiatric patient' claims at issue here." *Id.* (citing *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1373 (Fed. Cir. 2005) (reversing and remanding where "the district court committed legal error in establishing certain factual predicates to its non-obviousness determination")).

There is no principled reason to remand in *Janssen*—at the patent challengers' request—but not to remand here at the patentee's request.  In both cases, the district

court erred in analyzing obviousness, and in both cases, this Court should remand rather than find those facts itself. Correcting the majority's error would ensure consistency between these two recent decisions.

## III. The Majority Applied the Incorrect Standard for Harmless Error.

The majority's departure from the proper role of an appellate tribunal is further confirmed by its application of the wrong standard for harmless error. The "RFIB2001 Press Release" was the key reference relied on by the district court, particularly in discounting the skeptical literature, Appx44, but the district court erred in treating that reference as prior art. It did not find (by clear and convincing evidence) that the press release was "by others" under pre-AIA Section 102(a), erroneously placing the burden on Salix to prove the opposite. Appx41; *see also Google LLC v. IPA Techs. Inc.*, 34 F.4th 1081, 1085-86 (Fed. Cir. 2022).[3]

The majority opinion—without citation to any authority—declares that any error in relying on the press release was harmless because other evidence "established the obviousness of the claims." Op. at 11.

The majority applied the wrong standard. The question is not whether the majority would (or even a hypothetical factfinder could) have reached the same ultimate result without relying on the press release. The correct inquiry is whether the press release affected the district court's analysis. Opening Br. 37-39.

---

[3] Norwich has never argued that it presented sufficient evidence to carry that burden.

The panel should have asked whether the press release "induced **the [district] court** to make an essential finding which it otherwise would not have made." *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 582 (5th Cir. 2022) (emphasis added); *id.* at 584 (reversing findings of a district court that relied on incompetent evidence "as the primary bases for its decision," despite other evidence); *see also, e.g.*, *Lussy v. Comm'r of IRS*, 651 F. App'x 883, 884 (11th Cir. 2016) (same standard); *Collins & Aikman Corp. v. Carpostan Indus., Inc.*, 905 F.2d 1529 (4th Cir. 1990) (same standard); *O'Connor v. Peru State Coll.*, 781 F.2d 632, 639 (8th Cir. 1986) (same standard).  Put another way, can this Court be "[c]onfident that the district court would have reached the same result even if the [press release] had been excluded"?  *United States v. Ortiz-Ramirez*, 143 F. App'x 729, 730 (8th Cir. 2005).

The district court's decision demonstrates that the press release caused the district court to make findings it would not otherwise have made.  The district court emphasized the RFIB2001 Press Release throughout its findings:

- "As of the priority date, a POSA would have known about the successful RFIB 2001 Protocol results [from the RFIB2001 Press Release]."  Appx38.

- "Rifaximin had been shown to be effective in treating IBS in Pimentel 2006 and [(because of the RFIB2001 Press Release)] IBS-D in the RFIB 2001 Protocol[.]"  Appx38.

- "The RFIB 2001 Press Release reported that a '14-day course of rifaximin at 550 mg twice-a-day' dosage saw effective results."  Appx39.

- "[The RFIB2001 Press Release's] disclosure of positive results would give a POSA a reasonable expectation of success in using rifaximin to treat IBS-D." Appx42.

- "More importantly, a POSA would look to the top-line results from the RFIB 2001 Protocol [i.e., the RFIB2001 Press Release] as evidence that rifaximin could be effective in treating IBS-D[.]" Appx43.

The district court placed particular emphasis on the RFIB2001 Press Release in overcoming the evidence of skepticism. Three articles published shortly before the IBS-D Patents reviewed the literature—including the majority of the prior art at issue—and concluded that the information available did not support using antibiotics (like rifaximin) to treat IBS-D. Opening Br. 12. Less than a month before the priority date of the IBS-D Patents, Dr. Steve Vanner surveyed the studies and wrote: "There is insufficient evidence to recommend antibiotics for the treatment of irritable bowel syndrome at present." Appx5543. Stronger objective evidence of skepticism would be difficult to imagine.

The district court discounted these articles because they did not cite the RFIB2001 Press Release. *See* Appx44 ("Norwich argues that one of the [skeptical] articles was published before Yang and the RFIB 2001 Press Release, and the other two articles did not cite those references."); Appx42 ("[The] RFIB 2001 Press Release . . . was not cited by Quigley, Vanner, or Drossman[.]"). The district court's erroneous reliance on the press release caused it to make findings regarding secondary considerations that it would not otherwise have made.

16

Norwich has argued only that the district court **could** (or, perhaps, **should**) have reached the same result in the absence of the press release. Principal & Resp. Br. 44. Norwich has never argued that the district court **would** have made the same decision. Considering the district court's heavy reliance on the press release throughout its findings, such an argument would have been untenable.

The majority applied the wrong test for harmless error by asking whether (in its view) other evidence "established" the fact. In its appellate role, this Court was required to ask whether the press release induced the district court to make findings. It did. Because this Court cannot be confident that the district court would have reached the same result in the absence of the press release, any error was harmful.

## IV.    This Error Warrants Correction by this Court En Banc.

The error at issue concerns the core of this Court's responsibilities: the difference between reviewing a decision of a district court and reviewing the evidence and finding facts in the first instance. Because of its expertise as a court of specialized jurisdiction, this Court faces a particular temptation to decide patent cases "correctly," rather than confine itself to the standard of review. Commentators have previously suggested that this Court applies "rules in a manner that does not align with other appellate circuits' approaches." Alan B. Parker, *Examining Distinctive Jurisprudence in the Federal Circuit: Consequences of A Specialized Court*, 3 AKRON INTELL. PROP. J. 269, 281 (2009).

This Court should reaffirm its adherence to the correct standard of review. Its responsibility is not to survey the evidence on its own or guess at findings left unmade below but instead to review the fact-finding of a district court. When findings are missing, this Court must remand to the district court, rather than resolve factual disputes on its own.

## CONCLUSION & PRAYER

For these reasons, Salix respectfully requests that this Court grant rehearing, either panel rehearing or rehearing en banc.

Dated: May 10, 2024

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    */s/  William R. Peterson*

William R. Peterson
1000 Louisiana St., Ste. 4000
Houston, TX 77002
(713) 890-5188

Julie S. Goldemberg
2222 Market Street
Philadelphia, PA 19103

Michael J. Abernathy
Karon Nicole Fowler
Michael Sikora
110 North Wacker Drive, Ste. 2800
Chicago, IL 60606

***Counsel for Appellants, Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Bausch Health Ireland Ltd., Alfasigma S.P.A.***

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

1.    This opposition complies with the type-volume limitations of the Federal Rules and Federal Circuit Rules because this Petition for Rehearing contains 3,888 words.

2.    This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this opposition has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Times New Roman 14-point font.

*/s/ William R. Peterson*
William R. Peterson
*Counsel for Appellants, Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Bausch Health Ireland Ltd., Alfasigma S.P.A.*

Dated: May 10, 2024

**ADDENDUM**

# United States Court of Appeals for the Federal Circuit

———————————

**SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., BAUSCH HEALTH IRELAND LTD., ALFASIGMA S.P.A.,**
*Plaintiffs-Appellants*

**v.**

**NORWICH PHARMACEUTICALS INC.,**
*Defendant-Cross-Appellant*

———————————

2022-2153, 2023-1952

———————————

Appeals from the United States District Court for the District of Delaware in No. 1:20-cv-00430-RGA, Judge Richard G. Andrews.

———————————

Decided:  April 11, 2024

———————————

WILLIAM R. PETERSON, Morgan, Lewis & Bockius LLP, Houston, TX, argued for plaintiffs-appellants.  Also represented by MICHAEL J. ABERNATHY, KARON NICOLE FOWLER, MICHAEL SIKORA, Chicago, IL; JULIE S. GOLDEMBERG, Philadelphia, PA; JOSHUA DANIEL CALABRO, SHANNON KEOUGH CLARK, STEVEN C. KLINE, ALEXIS M. MCJOYNT, SCOTT K. REED, BECKY E. STEEPHENSON, Venable LLP, New York, NY.

CHAD A. LANDMON, Axinn, Veltrop & Harkrider LLP,

2                                SALIX PHARMACEUTICALS, LTD. v.
                                 NORWICH PHARMACEUTICALS INC.

Hartford, CT, argued for defendant-cross-appellant. Also represented by MATTHEW BECKER, REBECCA L. CLEGG, THOMAS K. HEDEMANN, MATTHEW S. MURPHY.

    IRENA ROYZMAN, Kramer Levin Naftalis & Frankel LLP, New York, NY, for amici curiae Regeneron Pharmaceuticals, Inc., Ocular Therapeutix, Inc. Also represented by CHRISTINE WILLGOOS; PAUL BRZYSKI, Washington, DC.

    PAUL WHITFIELD HUGHES, III, McDermott Will & Emery LLP, Washington, DC, for amicus curiae Vanda Pharmaceuticals Inc. Also represented by CHRISTOPHER MICHAEL BRUNO, SARAH HOGARTH, APRIL ELISE WEISBRUCH.

                    ─────────────────

    Before LOURIE, CHEN, and CUNNINGHAM, *Circuit Judges*.

    Opinion for the court filed by *Circuit Judge* LOURIE.

    Opinion dissenting-in-part filed by *Circuit Judge* CUNNINGHAM.

LOURIE, *Circuit Judge*.

    Salix Pharmaceuticals, Ltd., Salix Pharmaceuticals, Inc., Bausch Health Ireland Ltd., and Alfasigma S.P.A. (collectively, "Salix") appeal from a final judgment of the United States District Court for the District of Delaware holding claim 2 of U.S. Patent 8,309,569, claim 3 of U.S. Patent 10,765,667, claim 4 of U.S. Patent 7,612,199, and claim 36 of U.S. Patent 7,902,206 invalid as obvious. *See Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-cv-430, 2022 WL 3225381 (D. Del. Aug. 10, 2022) ("*Decision*").

    Norwich Pharmaceuticals Inc. ("Norwich") cross-appeals from an order that issued after the district court concluded that Norwich infringed claim 8 of U.S. Patent 8,624,573, claim 6 of U.S. Patent 9,421,195, and claims 11 and 12 of U.S. Patent 10,335,397 and had failed to prove

SALIX PHARMACEUTICALS, LTD. v.                    3
NORWICH PHARMACEUTICALS INC.

that those claims were invalid. That order, contained
within the final judgment, instructed the FDA that the ef-
fective approval date of Norwich's Abbreviated New Drug
Application ("ANDA") may not precede the expiration dates
of those claims. J.A. 51. Norwich also cross-appeals from
a denial of its motion to modify the final judgment. *See
Salix Pharms., Ltd. v. Norwich Pharms., Inc.*, No. 20-430,
2023 WL 3496373 (D. Del. May 17, 2023) ("*Rule 60(b) Or-
der*").

    For the following reasons, we affirm.

BACKGROUND

    Rifaximin, the active ingredient in Salix's commercial
product Xifaxan®, has been widely used as an antibiotic for
decades, having been first synthesized in the early 1980s
in Italy and approved there as an antibiotic in 1985. *Deci-
sion* at *8; J.A. 2532. The FDA approved Xifaxan nearly 20
years later, in 2004, as 200 mg tablets for the treatment of
travelers' diarrhea. *Decision* at *1. The FDA subsequently
approved 550 mg tablets for hepatic encephalopathy ("HE")
in 2010 and for irritable bowel syndrome with diarrhea
("IBS-D") in 2015. *Id.*

    Norwich sought to market a generic version of rifaximin
and, in 2019, filed an ANDA for 550 mg tablets with the
same indications as Xifaxan, certifying pursuant to
21 U.S.C. § 355(j)(2)(vii)(IV) that Salix's rifaximin patents
were invalid. Salix timely sued, asserting that Norwich's
ANDA infringed dozens of valid, Orange Book-listed pa-
tents. By the time of trial, the case had been streamlined
to three groups of patents:

- the '573, '195, and '397 patents, directed to treating
  HE ("the HE patents");

- the '569 and '667 patents, directed to treating IBS-D
  with 550 mg rifaximin three times a day (1,650
  mg/day) for 14 days ("the IBS-D patents"); and,

4                    SALIX PHARMACEUTICALS, LTD. v.
                            NORWICH PHARMACEUTICALS INC.

- the '199 and '206 patents, directed to rifaximin form β ("the polymorph patents").

Following a bench trial, the district court held that Norwich infringed the HE patents' claims and had failed to establish their invalidity. *Decision* at *10–11. Norwich did not appeal those holdings. The court also held that Norwich's ANDA infringed the IBS-D and polymorph patents, but that those patents' claims would have been obvious over certain prior art. *Id.* at *2–3, 16–17. Salix appealed those invalidity holdings.

As part of the entered judgment, the district court ordered that the effective date of a final approval of Norwich's ANDA should not precede October 2029, which is the latest expiration date associated with the HE patents. J.A. 51. Norwich then amended its ANDA in an attempt to remove the infringing HE indication and moved to modify the judgment under Federal Rule of Civil Procedure 60(b), asserting that the amendment negated any possible infringement. The court denied Norwich's motion, and Norwich cross-appealed.

We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

Salix first contends that the district court's conclusion that the asserted claims of the IBS-D patents were invalid as obvious was reached in error. Subsumed within that challenge is a question of whether or not a background reference discussed by the court was properly established as prior art. Salix also contends that the court erred in holding that the asserted polymorph patent claims were invalid as obvious. Norwich's cross-appeal asserts that the court erred in the phrasing of its order precluding final approval of its ANDA until expiration of the HE patents. Norwich further asserts that the court erred in denying its motion to modify after the ANDA was amended in an attempt to avoid infringement. We address each argument in turn.

I

We turn first to Salix's contention that the district court erred in concluding that the asserted claims of the IBS-D patents would have been obvious over the asserted prior art.

Whether or not a claim would have been obvious is a question of law, based on underlying factual determinations. *Hospira, Inc. v. Fresenius Kabi USA, LLC*, 946 F.3d 1322, 1328–29 (Fed. Cir. 2020). We review the ultimate legal question of obviousness *de novo* and the underlying factual determinations for clear error. *Id.* at 1328. A finding is clearly erroneous only if we are "left with a definite and firm conviction that the district court was in error." *Id.* (citations omitted).

The IBS-D patents are directed to treating IBS-D with 550 mg rifaximin, thrice-daily (1,650 mg/day), for 14 days. For example, claim 2 of the '569 patent depends from claim 1 as follows:

> 1. A method of providing acute treatment for diarrhea-associated Irritable Bowel Syndrome (dIBS) comprising: *administering 1650 mg/day* of rifaximin for 14 days to a subject in need thereof, wherein removing the subject from treatment after the 14 days results in a durability of response, wherein the durability of response comprises about 12 weeks of adequate relief of symptoms.

> 2. The method of claim 1, wherein *the 1650 mg is administered at 550 mg three times per day*.

'569 patent, col. 30 ll. 4–12 (emphases added); *see also* '667 patent, col. 46 ll. 29–33, 39–40 (claims 1 & 3, similar). The key limitation on appeal is the dosage amount that appears in the claims: 550 mg, three times per day ("TID"), for a total of 1,650 mg/day.

Norwich challenged the IBS-D claims' validity by asserting as prior art references a clinical trial protocol that had been published on the ClinicalTrials.gov website in 2005 ("the Protocol")[1] and a 2006 journal article ("Pimentel").[2]  The Protocol describes a Phase II study evaluating twice-daily doses of 550 mg (1,100 mg/day) and 1,100 mg (2,200 mg/day) for 14 and 28 days for the treatment of IBS-D.  *See* J.A. 7051.  Pimentel teaches administering 400 mg, TID (1,200 mg/day), for the treatment of IBS,[3] but further opines that the "optimal dosage of rifaximin may, in fact, be higher than that used in our study."  J.A. 4644.

The district court found that those two references disclose each and every limitation of the challenged IBS-D claims, and further found that a skilled artisan would have been motivated to combine those two references to arrive at what is claimed with a reasonable expectation of success.  *Decision* at *17, *19–20.  The court then concluded that the challenged IBS-D claims were invalid as obvious.  *Id.* at

---

[1]    ClinicalTrials.gov, *History of Changes for Study: NCT00269412, Randomized, Double Blind, Placebo-Controlled Study to Assess the Efficacy and Safety of Three Different Doses of Rifaximin Administered BID either Two or Four Weeks in the Treatment of Patients with Diarrhea-Associated Irritable Bowel Syndrome* (December 22, 2005); J.A. 7047–55.

[2]    M. Pimentel *et al.*, *The Effect of a Nonabsorbed Oral Antibiotic (Rifaximin) on the Symptoms of the Irritable Bowel Syndrome*, 145 ANN. INTERN. MED., 557 (2006); J.A. 4639–46.

[3]    Salix did not argue a difference between a motivation to use rifaximin to treat IBS versus IBS-D.  *Decision* at *19 n.3.  It concedes on appeal that "[r]oughly one-third of IBS patients suffer from IBS-D," Appellants' Br. at 6, and has not otherwise suggested that treatments for IBS would not inform treatments of IBS-D.

SALIX PHARMACEUTICALS, LTD. v.                    7
NORWICH PHARMACEUTICALS INC.

*17–22.  Salix appeals, asserting that the court erred in
finding that a skilled artisan would have had a reasonable
expectation of success in using the claimed 1,650 mg/day
dosage to treat IBS-D.  Appellants' Br. at 39–48.  Whether
or not there would have been a reasonable expectation of
success is a question of fact, *IXI IP, LLC v. Samsung Elecs.
Co.*, 903 F.3d 1257, 1262 (Fed. Cir. 2018), which we review
for clear error, *Hospira*, 946 F.3d at 1328.

   Salix does not appear to dispute the district court's
finding that the Protocol and Pimentel "disclose all limita-
tions of the IBS-D claims."  *See Decision* at *17.  Rather, it
contends that even if the asserted combination of refer-
ences effectively discloses the claimed 1,650 mg/day dos-
age, there remains insufficient evidence to support a
finding of a reasonable expectation of success in using that
particular dosage amount.  *See, e.g.*, Appellants' Br. at 39–
40.  According to Salix, the highest prior art dosage amount
that could have been supported with a reasonable expecta-
tion of success was the 1,200 mg/day dose evaluated by Pi-
mentel.  *Id.* at 40.  We disagree.

   The Protocol provides an outline of a planned Phase II
clinical trial in which "three different doses (275, 550 and
1100 mg) of rifaximin" were to be "administered BID [*i.e.*,
twice-daily] for either two or four weeks in the treatment
of patients with diarrhea-associated irritable bowel syn-
drome."  J.A. 7050 (cleaned up).  As an outline of that clin-
ical trial plan, the Protocol provides only that those three
specific, twice-daily dosage regimens were to be investi-
gated for either two or four weeks.  The Protocol does not
include any efficacy or safety data, nor does it mention a
1,650 mg/day dose or TID dosing.

   Although we have rejected the idea that "efficacy data
[are] always required for a reasonable expectation of suc-
cess," *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375,
1385 (Fed. Cir. 2019), we are hesitant to conclude as a gen-
eral matter that the disclosure of a Phase II clinical trial

plan, standing alone, provides an expectation of success sufficient to render obvious a dosage that was not included within the planned clinical trial. *See* Appellants' Reply Br. at 13–14. But the Protocol was not asserted alone; it was asserted in combination with Pimentel.

Pimentel teaches that administration of 400 mg rifaximin, TID (1,200 mg/day), "resulted in greater improvement in IBS symptoms" and "lower bloating score[s] after treatment." J.A. 4639; *see also id.* at 4642–43 (providing supporting data). Pimentel explains that the 400 mg TID regimen was chosen "on the basis of a previous study that demonstrated the efficacy of rifaximin in bacterial overgrowth." *Id.* at 4640. However, Pimentel does not merely provide that daily rifaximin doses of 1,200 mg were likely to be successful in the treatment of IBS. Pimentel further teaches that "[r]ecent data suggest that the *optimal dosage* of rifaximin *may, in fact, be higher* than that used in our study." J.A. 4644; *Decision* at *20 (emphases added).

The district court did not clearly err in finding that a skilled artisan would have looked to both of those references, considered their limits, and had a reasonable expectation of success as to the efficacy of 550 mg TID dosing. The combined message that the skilled artisan would have discerned from the Protocol and Pimentel is that the optimal dosage for treating patients suffering from IBS disorders may be higher than 400 mg TID, and the next higher dosage unit from the Protocol was 550 mg. We see no clear error in the conclusion that there would have been a reasonable expectation of success in administering the claimed 1,650 mg/day to IBS-D patients. Indeed, certainty and absolute predictability are not required to establish a reasonable expectation of success. *See Almirall, LLC v. Amneal Pharms. LLC*, 28 F.4th 265, 275 (Fed. Cir. 2022) ("A finding of a reasonable expectation of success does not require absolute predictability of success."); *Acorda Therapeutics, Inc. v. Roxane Lab'ys, Inc.*, 903 F.3d 1310, 1333 (Fed. Cir. 2018) ("This court has long rejected a

SALIX PHARMACEUTICALS, LTD. v.                    9
NORWICH PHARMACEUTICALS INC.

requirement of conclusive proof of efficacy for obviousness."
(cleaned up)).

Moreover, references establishing the background
knowledge of a person of ordinary skill in the art are con-
sistent with the reasonable expectation of success provided
by the combination of the Protocol with Pimentel. For ex-
ample, Cuoco[4] teaches the efficacy of 1,200 mg rifaxi-
min/day for 14 days for the treatment of small intestinal
bacterial overgrowth ("SIBO").   J.A. 4533.   Salix has
acknowledged that those of ordinary skill in the art identi-
fied "bacterial alterations" as a potential underlying cause
for IBS, Appellants' Br. at 7, and the literature[5] describes
SIBO as a condition that is "highly prevalent in patients
with irritable bowel syndrome (IBS)," such that "SIBO de-
contamination is associated [with] a significant improve-
ment of IBS symptoms."   J.A. 4664.   We therefore agree
with the district court that references describing the treat-
ment of SIBO would have been pertinent to the skilled ar-
tisan's considerations as to what treatments would have a
potential for success in treating individuals suffering from
IBS.

In addition to Cuoco, Lauritano[6] teaches an increase in
rifaximin efficacy for the treatment of SIBO as doses were
increased from 600 mg/day to 1,200 mg/day, providing the

_____

[4]   L. Cuoco & M. Salvagnini, *Small intestine bacterial
overgrowth in irritable bowel syndrome: a retrospective
study with rifaximin*, 52 MINERVA GASTROENTEROL.
DIETOL. (2006) 89; J.A. 4533–39.

[5]   E. Scarpellini et al., *High dosage rifaximin for the
treatment of small intestinal bacterial overgrowth*,
25 ALIMENT. PHARMACOL. THER. 781 (2007); J.A. 4663–67
("Scarpellini").

[6]   E.C. Lauritano et al., *Rifaximin dose-finding study
for the treatment of small intestinal bacterial overgrowth*,
22 ALIMENT. PHARMACOL. THER., 31 (2005); J.A. 7267–71.

trend that Pimentel described as indicating that doses higher than 1,200 mg/day may be even more optimal for the treatment of IBS. J.A. 7267 ("Higher doses of rifaximin lead to a significant gain in terms of therapeutic efficacy in [SIBO] eradication without increasing the incidence of side-effects."); *see also id.* at 4644. As evidenced by Scarpellini and Lin,[7] those in the art advanced on those findings, and subsequently evaluated higher doses. For example, Scarpellini reported that a 1,600 mg/day dose "showed a significantly higher efficacy" compared with 1,200 mg/day for the treatment of SIBO. J.A. 4663; *see also id.* at 4666 (Table 1, noting study patients included those suffering from IBS-D); *id.* at 4747 (teaching that "[a]bout 400 to about 600 mg of rifaximin may be administered TID for about 10 days" (*i.e.*, 1,200 mg/day to 1,800 mg/day) for the eradication of bacterial overgrowth).

The record further supports the finding that there would have been a reasonable expectation of success in administering higher doses of rifaximin without an intolerable increase in negative side effects. For example, Cuoco teaches that rifaximin was understood as having "a low risk of causing microbial resistance," J.A. 4533, and that rifaximin was well known for its "profile of tolerability and safety widely described in the literature," *id.* at 4538. Scarpellini further reported that the 1,600 mg/day dose provided a "similar compliance and side-effect profile" compared with the 1,200 mg/day dose. *Id.* at 4663. As the district court noted, the "[w]idespread off-label use" of rifaximin also supported the conclusion that rifaximin was safe and effective "for the treatment of IBS-D with a reasonable expectation of success." *Decision* at *19; *see also* Appellants' Br. at 17 ("There is no dispute that skilled

---

[7] International Patent Application Publication 2006/102536; J.A. 4721–47.

SALIX PHARMACEUTICALS, LTD. v.                    11
NORWICH PHARMACEUTICALS INC.

artisans knew of the general concept of trying off-label use
of rifaximin to treat IBS-D.").

In view of the record before us, we see no clear error in
the finding that a skilled artisan would have had a reason-
able expectation of success in administering the claimed
1,650 mg/day regimen for the treatment of IBS-D. We
therefore affirm the district court's holding that the chal-
lenged IBS-D claims would have been obvious over the
cited references. *See In re Applied Materials, Inc.*, 692 F.3d
1289, 1295 (Fed. Cir. 2012) ("[W]here the general condi-
tions of a claim are disclosed in the prior art, it is not in-
ventive to discover the optimum or workable ranges by
routine experimentation." (citation omitted)).

Salix further contends that a Press Release[8] issued by
Salix in a filing with the Securities and Exchange Commis-
sion less than a year before the patents' priority date was
not prior art because Norwich failed to establish that it was
"by others" as required by pre-AIA 35 U.S.C. § 102(a). Ap-
pellants' Br. at 30–39. According to Salix, the district
court's inclusion of that allegedly non-prior art reference in
its discussion of the skilled artisan's expectation of success
was harmful error. *Id.*

Although the district court cited the Press Release in
its discussion of the skilled artisan's expectations, it ulti-
mately held that the "Protocol and Pimentel [] disclose all
limitations of the IBS-D claims" and that a skilled artisan
"would have been motivated to combine the . . . Protocol
and Pimentel [] with a reasonable expectation of success."
*Decision* at *17. We therefore need not decide whether or
not the Press Release was prior art because, even assuming
that it was not, the Protocol and Pimentel alone estab-
lished the obviousness of the claims.

---

[8]    Salix Pharms., Ltd., Current Report (Form 8-K)
(Sept. 5, 2007); J.A. 7477–82.

We accordingly affirm the district court's determination that Norwich established that the IBS-D claims would have been obvious in view of the Protocol and Pimentel.

## II

We next turn to Salix's contention that the district court clearly erred in finding that there would have been a reasonable expectation of success in obtaining the rifaximin form β recited in the polymorph patents' claims.

Whether or not there would have been a reasonable expectation of success is a question of fact, *IXI IP, LLC v. Samsung Elecs. Co.*, 903 F.3d 1257, 1262 (Fed. Cir. 2018), which we review for clear error, *Hospira*, 946 F.3d at 1328. We review the ultimate conclusion of obviousness *de novo*. *Id.*

The polymorph patents are directed to rifaximin form β. For example, claim 4 of the '199 patent recites:

> 4. Rifaximin in polymorphic form β, wherein the rifaximin has x-ray powder diffraction pattern peaks at about 5.4°; 9.0°; and 20.9°2θ and wherein the rifaximin has a water content of greater than 5%.

'199 patent, col. 10 ll. 24–27; *see also* '206 patent, col. 11 ll. 33–37, 41–43 (claims 34 & 36, similar).

Norwich challenged the polymorph claims' validity by asserting, *inter alia*, Cannata,[9] which discloses that rifaximin exists in crystalline form with "outstanding antibacterial properties." J.A. 4528; *Decision* at *6. Cannata does not discuss rifaximin's crystal structure in detail, but it does disclose several preparation protocols for rifaximin that include solvents used for crystallization. J.A. 4529–31; *see also id.* at 3408.

---

[9]     U.S. Patent 4,557,866; J.A. 4526–32.

The district court held that expert testimony supported a conclusion that, in view of the prior art, (1) a skilled artisan would have had good reason to characterize the crystalline rifaximin obtained by following the Cannata protocols, (2) that such characterization was routine and could have been performed "in one day," and (3) that doing so would have led the skilled artisan to have "detected rifaximin ß." *Decision* at *6–7. The district court subsequently concluded that the challenged polymorph claims would have been obvious over the asserted prior art in view of the common knowledge of the skilled artisan. *Id.* at *7–8.

Salix first challenges the district court's conclusion of obviousness by asserting that *Grunenthal GMBH v. Alkem Laboratories Ltd.*, 919 F.3d 1333 (Fed. Cir. 2019) and *Pharmacyclics LLC v. Alvogen, Inc.*, No. 2021-2270, 2022 WL 16943006 (Fed. Cir. Nov. 15, 2022) compel the opposite result. Appellants' Br. at 49–51. Salix further contends that the court "applied the wrong test" by not following a rationale provided in the district court opinion from *Pharmacyclics. Id.* at 55–57. We disagree.

In *Grunenthal*, we held that it was not clear error for the district court to find that the record failed to establish by clear and convincing evidence a reasonable expectation of success in preparing the claimed polymorphic Form A of tapentadol hydrochloride. *See* 919 F.3d at 1341. In that case, the synthesis of tapentadol hydrochloride known in the prior art produced a particular form—Form B. *Id.* The district court found that there was a lack of evidence that a prior art synthesis would have resulted in the claimed Form A and that no prior art guidance existed to establish "what particular solvents, temperatures, agitation rates, etc., were likely to result" in the claimed polymorph. *Id.* at 1343. We found no clear error in that analysis. *Id.* at 1344–45.

We also affirmed a conclusion of non-obviousness of a claimed polymorph in our non-precedential *Pharmacyclics* decision, which issued after the district court released its decision in this case. *See* 2022 WL 16943006, at *10–11. But the court here acted within its discretion when it declined to follow the district court decision in *Pharmacyclics* as though it was binding precedent. *See Decision* at *7 n.1 ("Plaintiffs call to my attention [the district court's decision in] *Pharmacyclics LLC v. Alvogen Pine Brook LLC*. I have considered that case but I do not agree with it on this point."). And our later affirmance of the factual findings in *Pharmacyclics* did not retroactively override the district court's analysis here.

Moreover, a lack of clear error in *Grunenthal* and *Pharmacyclics* does not compel a conclusion of non-obviousness here. Indeed, *Grunenthal* underscored the factual nature of these types of inquiries and expressly held that it did "not rule out the possibility that polymorph patents could be found obvious." 919 F.3d at 1344–45. "The determination of obviousness is dependent on the facts of each case." *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F.3d 1075, 1089 (Fed. Cir. 2008); *see also Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1366 (Fed. Cir. 2007). In *Grunenthal* and *Pharmacyclics*, the issue was whether a skilled artisan would have had a reasonable expectation of success in *producing* a crystalline form of a compound. *See* 919 F.3d at 1341–43; 2022 WL 16943006, at *10–11. Here, the prior art included a process to produce a crystalline form of rifaximin, and the dispute centered around *characterizing* the crystalline form resulting from that process. *See Decision* at *13–14. These distinct factual predicates support the district courts' factual findings in each of these three cases under the clear error standard of review.

In *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1 (1966), the Supreme Court set forth the background against which obviousness is to be assessed: "Under § 103, the scope and content of the prior art are to be determined"

and "differences between the prior art and the claims at issue are to be ascertained." *Id.* at 17. The scope and content of the prior art here includes preparations of crystalline rifaximin, which expert testimony supports would have yielded the β form of rifaximin. *Decision* at *7; J.A. 3391–92 ("[T]he as-synthesized form of rifaximin reported by Examples 1, 6, 7, and 9 [of Cannata] were necessarily rifaximin form Beta, because of the methods used, the solvent system used, and it was later confirmed by later work, including work from the named inventors."); *id.* at 3408–09 (similar testimony); *id.* at 3393–3404 (discussing the evidence of record that supports that conclusion); *id.* at 4700–07, 4846–47, 5007–14 (providing supporting evidence for that conclusion). And the parties do not dispute that the methods for characterizing the resulting crystalline rifaximin were well known and readily available to the skilled artisan. *Decision* at *3. The difference between the prior art and the claims is thus effectively nothing more than the performance of routine characterization to identify the polymorphic forms that result from the known Cannata processes.

In this regard, Salix does not appear to dispute that there would have been a motivation to explore potential polymorphic forms of rifaximin. Appellants' Br. at 48–49. Rifaximin was, after all, a known compound with a known, useful activity. Salix further refers to the district court's finding that "polymorph β is a commonly produced polymorph and the most stable form of rifaximin" as an "undisputed" fact. *Id.*; *see also Decision* at *7. There thus appears to be no dispute that the claimed polymorph can be readily produced from the crystallization conditions disclosed in Cannata and that it would have been well within the abilities of the skilled artisan to procure and characterize the β form of rifaximin.

According to Salix, however, rifaximin's β form constituted a non-obvious invention because, although skilled artisans "actually succeed[ed]" in producing and

characterizing it, they would not have "*expect*[*ed*] to succeed" because, as of the critical date, the polymorphic nature of rifaximin had not yet been reported and the identity of the β form remained undisclosed. Appellants' Br. at 49. Salix further argues that there could have been no expectation of success because the skilled artisan would not have been able to predict what polymorphic forms might result from following the preparation protocols disclosed in the prior art. *Id.* at 20–21, 50–53. Salix's framing of the issue suggests that no unknown entity could ever be obvious, as one cannot reasonably expect what was hitherto unknown, which is incorrect.

Here, the district court found a reasonable expectation of success in characterizing the crystalline product of Cannata for potential polymorphism using routine, conventional methods and skill. *Decision* at *6–7. We see no clear error in that conclusion. Indeed, Salix has done no more than combine known elements of the prior art to verify readily accessible information concerning a compound already in the hands of those of ordinary skill in the art, and such routine efforts do not justify removing this polymorph from the public domain. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007); *see also Pfizer*, 480 F.3d at 1367–68. To be sure, we do not hold that there is always a reasonable expectation of success in accessing or characterizing polymorphs. We are simply reviewing the district court's decision before us as to its factual finding of a reasonable expectation of success, and in so doing, have not been left with a definite and firm conviction that a mistake was made in reaching that finding. *See Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1374 (Fed. Cir. 2008).

Having found no clear error in the district court's fact findings as to the existence of a reasonable expectation of success, we affirm the court's conclusion that the polymorph patent claims were invalid as obvious. Because we affirm the court's holding that the polymorph patent claims

SALIX PHARMACEUTICALS, LTD. v.                    17
NORWICH PHARMACEUTICALS INC.

would have been obvious over the asserted prior art, we
need not consider Norwich's separate argument that the
polymorph claims would have also been invalid as inher-
ently anticipated.

### III

On cross-appeal, Norwich raises two related but dis-
tinct arguments that arose after the district court held that
Norwich infringed the HE patents and failed to establish
invalidity. *See Decision* at *10–16. Norwich first argues
that, in issuing its final decision, the district court misin-
terpreted 35 U.S.C. § 271(e)(4)(A), which directs a court,
following a finding of infringement, to order the FDA to de-
fer final approval of an ANDA until the expiration of the
infringed patent. According to Norwich, that statute pre-
cludes delaying final approval of an entire ANDA, and in-
stead requires delaying only the approval of the infringing
use.

Norwich's second argument arises from its decision to
amend its ANDA to carve out the infringing HE use after
final judgment. Following that amendment, Norwich filed
a motion to modify the final judgment to allow for prompt
approval of the amended ANDA that purportedly no longer
sought approval for the infringing HE use. The district
court denied that motion, and Norwich cross-appealed.

We address both of Norwich's concerns in turn.

### A.

We first address Norwich's arguments regarding the
district court's interpretation of 35 U.S.C. § 271(e)(4)(A) in
ordering that a final approval of Norwich's ANDA could not
be effective before the HE patents expired. J.A. 50–51.

We review issues of statutory interpretation without
deference to the district court's interpretation. *Waymark
Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1366 (Fed. Cir.
2001). "The starting point in every case involving

construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J., concurring). Moreover, we "give effect, if possible, to every clause and word of [the] statute." *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (citation omitted). When a statute does not define a given word or phrase, we presume that Congress intended the word or phrase to have its ordinary meaning. *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). However, "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (citation omitted).

Section 271(e)(4)(A) instructs that, following a finding of infringement, "the court shall order the effective date of any approval of the drug or veterinary biological product involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed." The order here instructed the FDA that "the effective date of any final approval . . . of Norwich's ANDA No. 214369 is to be a date not earlier than the date of expiration of the last to expire of [the HE patents] (currently October 2, 2029)." J.A. 51.

Norwich argues that the language of § 271(e)(4) requires courts to tie the restriction on FDA approval to the *indication* for which the ANDA seeks approval when that indication was the source of infringement. Cross-Appellants' Br. at 14. Norwich's ANDA originally sought approval for the treatment of both IBS-D and HE. Although only the HE indication was found to infringe a valid patent, the order restricted final approval of the entire ANDA, including the non-infringing indication, until 2029. Norwich argues that the statute requires the district court's order "to specify that the approval date pertains to Norwich's ANDA seeking approval for the infringing HE Indication." *Id.* at 18. But the district court order concerned only the

specific ANDA in question that included an infringing use, referred to the ANDA by its number, and enjoined the approval of that ANDA. J.A. 51. Norwich suggests that the district court order unfairly precludes it from receiving final approval of a new non-infringing ANDA.[10] The district court did no such thing.

Section 271(e)(4)(A) describes delaying the approval of "the drug . . . involved in the infringement." Since the FDA does not approve drugs in the abstract, but rather approves drugs for particular uses (indications) of that drug, the statute is appropriately construed as directed to approval of particular infringing uses of the drug, not all uses of the drug including non-infringing uses. The statutory scheme makes clear that it is not the potential use of Norwich's rifaximin for HE that constitutes the relevant infringement here, nor is it the unpatented drug compound itself, but rather it is the submission of the ANDA that included an infringing use. *See* 35 U.S.C. § 271(e)(2)(A) (making it an "act of infringement to submit" an ANDA "for a drug claimed in a patent or the use of which is claimed in a patent"). That the ANDA further recited a non-patent-protected indication does not negate the infringement resulting from the ANDA's submission. The order thus appropriately delayed the effective final approval date of "this infringing ANDA" submission. J.A. 48. The order appropriately said nothing that would prevent approval of a new non-infringing ANDA.

We therefore affirm the district court's order setting the effective approval date of Norwich's ANDA No. 214369

---

[10] Norwich notes that on June 2, 2023, FDA tentatively approved its amended ANDA, which purportedly lacks the HE indication. Cross-Appellant's Br. at 6. The tentative approval letter noted, however, that "final approval cannot be granted until October 2, 2029 as specified in the court order." *Id.*

to be no earlier than the date of expiration of the last to expire of the HE patents.

### B.

Following entry of the final judgment, which included the resetting order barring final approval of Norwich's ANDA until 2029, Norwich amended its ANDA in an attempt to remove the infringing HE indication. Norwich then moved to modify the judgment under Federal Rule of Civil Procedure 60(b), asserting that the amendment negated any possible infringement, and that the final approval date of the ANDA, as amended, should not be tied to the HE patents. *See* Cross-Appellant's Br. at 27. The district court denied that motion, holding that Norwich "fully litigated the merits of its non-infringement and invalidity case, lost, and now seeks a way around the final judgment through Rule 60(b)." *Rule 60(b) Order* at *2. Norwich cross-appealed.

"Because denial of a Rule 60(b) motion is a procedural issue not unique to patent law, we apply the rule of the regional circuit where appeals from the district court would normally lie," *Amstar Corp. v. Envirotech Corp.*, 823 F.2d 1538, 1550 (Fed. Cir. 1987), which, here, is the Third Circuit. The Third Circuit "review[s] the denial of Rule 60(b) relief for an abuse of discretion." *Coltec Indus., Inc. v. Hobgood*, 280 F.3d 262, 269 (3d Cir. 2002); *see also Bohus v. Beloff*, 950 F.2d 919, 930 (3d Cir. 1991) (noting that Rule 60(b) motions are "extraordinary relief which should be granted only where extraordinary justifying circumstances are present" (citation omitted)).

"A district court may reconsider its own finding of infringement in light of an amended ANDA," but the court need not do so. *Ferring B.V. v. Watson Lab'ys, Inc. Fla.*, 764 F.3d 1382, 1391 (Fed. Cir. 2014). Rather, "[a]llowing an amendment is within the discretion of the district court, guided by principles of fairness and prejudice to the patentholder." *Id.* Here, the court reasonably held that

SALIX PHARMACEUTICALS, LTD. v.                    21
NORWICH PHARMACEUTICALS INC.

consideration of the amended ANDA would be inequitable
and inappropriate. *Rule 60(b) Order* at \*2. The court noted
that "[i]t is not a simple matter to determine whether an
ANDA applicant has successfully carved out language from
a label to turn infringement into non-infringement" and
that what Norwich sought in its Rule 60(b) motion "would
essentially be a second litigation" following final judgment.
*Id.* (noting also that, other than simply asserting that it
carved out the HE indication and providing the court with
the amended label, Norwich "ha[d] presented no evidence
in support of its assertion" that the amended ANDA would
no longer infringe the HE patents).

Norwich nevertheless argues that the amended ANDA
satisfies the judgment by not seeking approval for the in-
fringing use and that, in view of the amendment, it is no
longer equitable to apply the judgment prospectively. But
Rule 60(b) is permissive, holding only that the court "*may*
relieve a party or its legal representative from a final judg-
ment, order, or proceeding" under various circumstances.
That is—a district court has the discretion, not the obliga-
tion, to modify a final judgment in view of a post-judgment
ANDA amendment. And as the district court held, simply
asserting that a patented indication has been carved out of
an ANDA application does not necessarily satisfy the judg-
ment or entitle the applicant to direct entry to the market.
*See Rule 60(b) Order* at \*2. We see no abuse of discretion
in the district court reaching that conclusion or in subse-
quently denying the motion.

Norwich further argues that the district court erred by
not explicitly discussing Rule 60(b)(6), which provides that
a court may relieve a party from a final judgment for "any
other reason that justifies relief." We disagree that the dis-
trict court so erred. The court's Memorandum Order thor-
oughly discussed the law, the equities, the record, and the
arguments before it. In so doing, the court implicitly found
no additional reason that justified the relief that Norwich
sought.

22                              SALIX PHARMACEUTICALS, LTD. v.
                                NORWICH PHARMACEUTICALS INC.

We therefore affirm the district court's denial of the motion to modify the final judgment.

## CONCLUSION

We have considered both parties remaining arguments and find them unpersuasive.  For the foregoing reasons, we affirm (1) the district court's holding that claim 2 of the '569 patent, claim 3 of the '667 patent, claim 4 of the '199 patent, and claim 36 of the '206 patent would have been invalid as obvious, (2) the district court's order setting the effective approval date of Norwich's ANDA to be no earlier than the date of expiration of the last to expire of the HE patents, and (3) the district court's denial of the motion to modify the final judgment.

### **AFFIRMED**

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

---

**SALIX PHARMACEUTICALS, LTD., SALIX PHARMACEUTICALS, INC., BAUSCH HEALTH IRELAND LTD., ALFASIGMA S.P.A.,**
*Plaintiffs-Appellants*

**v.**

**NORWICH PHARMACEUTICALS INC.,**
*Defendant-Cross-Appellant*

---

2022-2153, 2023-1952

---

Appeals from the United States District Court for the District of Delaware in No. 1:20-cv-00430-RGA, Judge Richard G. Andrews.

---

CUNNINGHAM, *Circuit Judge*, dissenting in part.

I join most of the majority's opinion, but I respectfully dissent from the majority's opinion concerning U.S. Patent Nos. 8,309,569 and 10,765,667 (the "IBS-D patents"). I would vacate the district court's judgment that the asserted claims of the IBS-D patents are obvious and remand for further proceedings.

## I

The district court found that "[t]he asserted IBS-D claims describe a dosing regimen within the known range" and that "[a] POSA would have been motivated to combine

2                      SALIX PHARMACEUTICALS, LTD. v.
                       NORWICH PHARMACEUTICALS INC.

the RFIB 2001 Protocol[1] and Pimentel 2006[2] with a reasonable expectation of success." *Salix Pharms., Ltd. v. Norwich Pharms., Inc.,* No. 20-430-RGA, 2022 WL 3225381, at *17 (D. Del. Aug. 10, 2022) ("*Decision*") (footnotes added). Based on these findings of fact, the court concluded that "Pimentel 2006 in light of the RFIB 2001 Protocol renders the asserted claims of the IBS-D patents obvious." *Id.* at *18. After reviewing the evidence relied on by the district court, applying a clear error standard, I am "left with the definite and firm conviction that a mistake has been committed" regarding these findings. *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 (Fed. Cir. 2007) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

The evidence cited by the district court does not support its finding that a skilled artisan would have a reasonable expectation of success for the claimed dosage. *See Decision* at *17, *19. "The reasonable-expectation-of-success analysis must be tied to the scope of the claimed invention"—here, the claimed 1,650 mg/day (550 mg TID[3]) dosage for treating IBS-D. *Teva Pharms. USA, Inc. v. Corcept Therapeutics, Inc.*, 18 F.4th 1377, 1381 (Fed. Cir. 2021). The district court mainly relied on the results of the

---

[1]   ClinicalTrials.gov, *History of Changes for Study: NCT00269412, Randomized, Double Blind, Placebo-Controlled Study to Assess the Efficacy and Safety of Three Different Doses of Rifaximin Administered BID Either Two or Four Weeks in the Treatment of Patients with Diarrhea-Associated Irritable Bowel Syndrome* (December 22, 2005); J.A. 7048–55.

[2]   M. Pimentel et al., *The Effect of a Nonabsorbed Oral Antibiotic (Rifaximin) on the Symptoms of the Irritable Bowel Syndrome*, 145 ANNALS INTERN. MED. 557 (2006); J.A. 4639–46. The majority refers to this reference as Pimentel.

[3]   TID stands for three times per day.

RFIB 2001 trial disclosed in the RFIB 2001 Press Release[4] in arriving at this conclusion. *Decision* at *19. However, there is no reason that a skilled artisan "would have known about the successful RFIB 2001 Protocol results," *id.*, as to the claimed 1,650 mg/day (550 mg TID) dosage because the RFIB 2001 Press Release only discloses an improvement in the *550 mg twice-a-day* group. J.A. 7480; *see Decision* at *19. In fact, evidence in the record suggests the opposite— that a skilled artisan might have understood the absence of discussions of the *1,100 mg twice-a-day* group to imply that higher dosage *did not* lead to similar successful results. *See* J.A. 3313–14. Indeed, the 2,200 mg/day dosage "did not achieve more responders compared to the placebo for adequate relief."[5] J.A. 3042. Thus, the court's reliance on the RFIB 2001 Press Release to establish a reasonable expectation of success was erroneous.[6]

The district court's citations to other references do not cure this error. Cuoco[7] discloses a total dose of *1,200*

---

4    Salix Pharms., Ltd., Current Report (Form 8-K) (Sept. 5, 2007); J.A. 7477–82.

5    Although the evidence that the 2,200 mg/day dosage did not achieve adequate relief post-dates the priority date of the patent, it clarifies what a skilled artisan would have understood from the RFIB 2001 Press Release. *See Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1379 (Fed. Cir. 2005) (holding district court erred in not considering a reference that post-dates the priority date when it is relevant to what "was known in the art at the relevant time").

6    Salix also challenges the district court's finding that the RFIB 2001 Press Release was prior art. Appellant's Br. 30–39; *Decision* at *20. I agree with the majority that we do not need to reach this issue.

7    L. Cuoco & M. Salvagnini, *Small intestine bacterial overgrowth in irritable bowel syndrome: a retrospective*

*mg/day* for 14 days, and Barrett[8] similarly discloses 400
mg TID for a total dosage of *1,200 mg/day*. *Decision* at
\*19; *see also* J.A. 4536; J.A. 4800. The district court did not
explain why these references would give rise to a reasonable expectation of success for a dosage that is almost 40%
higher. The reference by the district court to the
"[w]idespread off-label use" of rifaximin was also unaccompanied by any discussion of dosages or citations to the record. *Decision* at \*19. Likewise, it discussed market
research that shows many physicians prescribe rifaximin
for IBS without discussing their prescribed dosages. *Decision* at \*20 (citing J.A. 7186). The cited research does not
show that physicians prescribe at the 1,650 mg/day (550
mg/TID) dosage. J.A. 7186.

Although "efficacy data is [not] always required for a
reasonable expectation of success," *OSI Pharms., LLC v.
Apotex Inc.*, 939 F.3d 1375, 1385 (Fed. Cir. 2019), the analysis must still be tied to the scope of the claims—here, the
1,650 mg/day dosage. *See Teva*, 18 F.4th at 1381; *see also
In re Cyclobenzaprine Hydrochloride Extended-Release
Capsule Pat. Litig.*, 676 F.3d 1063, 1070–72 (Fed. Cir.
2012) (finding no reasonable expectation of success when
the court "cited no evidence specifically indicating that a
[drug with a pK profile disclosed in the prior art] would be
expected to yield the same therapeutic effect as [a different
pK profile as claimed]"); *Ferring B.V. v. Watson Lab'ys,
Inc.-Fla.*, 764 F.3d 1401, 1407 (Fed. Cir. 2014) (finding asserted claims not to be invalid for obviousness when prior
art references "disclose 500 mg [] formulations, but no

---

*study with rifaximin*, 52 MINERVA GASTROENTEROL.
DIETOL. 89 (2006); J.A. 4533–39.

[8] G. Barrett, Abstract, *Benefits of the Antibiotic
Rifaximin as Empiric Therapy in Patients with Irritable
Bowel Syndrome*, 101 AM. J. GASTROENTEROL. S479 (2006);
J.A. 4799–4800.

SALIX PHARMACEUTICALS, LTD. v.                    5
NORWICH PHARMACEUTICALS INC.

higher tablet strengths, and particularly not the claimed 650 mg formulation"). Aside from its erroneous reliance on the RFIB 2001 Press Release, the district court failed to tie its reasonable expectation of success analysis to the claimed dosage. Therefore, I would find that it clearly erred in its reasonable expectation of success analysis.

In sum, the district court clearly erred in relying on the RFIB 2001 Press Release and other references that do not teach the claimed dosage. For these reasons, I would have found the district court's finding to be clearly erroneous and would vacate the district court's judgment that the IBS-D claims were invalid as obvious.

## II

In affirming the district court's judgment of obviousness, the majority relies on one additional sentence in Pimentel 2006 regarding the reasonable expectation of success analysis: "Recent data suggest that the optimal dosage of rifaximin may, in fact, be higher than that used in our study." J.A. 4644; *see* Maj. Op. 8. But the lack of discussion of any actual dosage that may be optimal, the use of the word "may," and the fact that the RFIB 2001 Protocol discloses a specific dosing regimen of 2,200 mg/day rather than 1,650 mg/day all call into question the majority's finding. Indeed, the district court only relied on this sentence in its motivation to combine analysis and did not rely on this sentence in its reasonable expectation of success analysis. *See Decision* at *18–20. The parties never made this argument before us. Therefore, I disagree that this additional sentence, when considered together with the RFIB 2001 Protocol, would give rise to a reasonable expectation of success for the claimed dosage.

The majority also discusses references not relied on by the district court in its reasonable expectation of success

6                                    SALIX PHARMACEUTICALS, LTD. v.
                                     NORWICH PHARMACEUTICALS INC.

analysis, including Lauritano[9], Scarpellini[10], and Lin.[11]
Maj. Op. 9–10. But the district court did not make any
findings on what these references teach, other than finding
that the references were prior art. *See Decision* at *17–22.
Nor are the majority's conclusions regarding these refer-
ences uncontested. For example, Salix argues that Scar-
pellini and Lauritano are both directed to the treatment of
small intestinal bacterial overgrowth (SIBO), not to the
treatment of IBS or IBS-D, and therefore cannot establish
a reasonable expectation of success. Appellant's Reply Br.
18. Although the majority may be right that Lauritano's
and Scarpellini's disclosures on treating SIBO also support
finding a reasonable expectation of success for treating
IBS-D, *see* Maj. Op. 9–10, the district court never made this
finding. *See Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527
F.3d 1318, 1323 (Fed. Cir. 2008) (declining to find what a
prior art reference teaches in the first instance). It merely
found that "[t]he relationship between IBS and SIBO was
actively being explored," and that certain prior art refer-
ences "do not teach away from using rifaximin to treat
IBS." *Decision* at *21. I would not make such fact-findings
about Scarpellini and Lauritano in the first instance.

In summary, I would vacate the district court's judg-
ment that the asserted claims of the IBS-D patents were
obvious and remand for further proceedings. On remand,
I would order the district court to consider in the first in-
stance the teachings in the additional prior art references.

---

[9]    E.C. Lauritano et al., *Rifaximin dose-finding study
for the treatment of small intestinal bacterial overgrowth*,
22 ALIMENT. PHARMACOL. THER. 31 (2005); J.A. 7267–71.

[10]    E. Scarpellini et al., *High dosage rifaximin for the
treatment of small intestinal bacterial overgrowth*,
25 ALIMENT. PHARMACOL. THER. 781 (2007); J.A. 4663–67.

[11]    International Patent Application Publication No.
WO 2006/102536; J.A. 4721–47.

SALIX PHARMACEUTICALS, LTD. v.                                    7
NORWICH PHARMACEUTICALS INC.

*See ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d
1572, 1578 (Fed. Cir. 1984) ("Where the trial court fails to
make findings, the judgment will normally be vacated and
the action remanded for appropriate findings to be made.").
Accordingly, I respectfully dissent in part.